21-2495 Minnesota Jason Blais versus United States. Well the court will hear from Mr. Gabrielson. Mr. Gabrielson you'll need to unmute your microphone please. There we go. Sorry about that. No problem. Thank you. May it please the court, counsel, my name is James Gabrielson and I am arguing on behalf of Plaintiff Appellant Jason Blais. This case comes before the court because Karen Larson was killed through the 2015 motor vehicle accident with Paul Barron, a rural carrier working for the United States Postal Service. As he attempted to pass another vehicle while driving from the passenger seat in a vehicle he illegally modified in order to better service his group. There is no dispute between the parties that this claim was timely and properly presented under the federal tort claims act where sovereign immunity is waived when a federal employee commits a tort while acting within the scope of his employment. Similarly there is no dispute between the parties that the applicable law concerning scope of employment determinations should be the law of the state in which the alleged act or omission occurred. The Minnesota Supreme Court addresses scope of employment in detail in the case Edgewater Motels v. Gadsky. They adopted a four-part test. This test requires that the employee's conduct be substantially within work-related limits of time and place, that the employee's conduct is of the kind authorized by the employer or reasonably related to that employment, that the employee's act was motivated at least in part by the employer's desire to further the employer's interests, and that the employer should have pursued the employee's conduct given the nature of the employment and the duties related to it. Mr. Gabrielson, you'll agree that you have to meet all four of those requirements, right? Yes, sir. Yes, all four are required. When applying this this four-part rule, the Edgewater court notes that there is no hard and fast rule that can be applied to resolve the scope of employment inquiry in every case. Instead, each case must be decided on its own individual facts. Rather than take this approach, however, the district court largely adopted its previous holding from Murray v. United States, where a National Guardswoman was not considered to be acting within the scope of her employment while driving to school from her home. Now, the district court's holding that Barron was outside of Scopel's employment was largely based on three factors. First, a general coming-and-going rule that the court applied. Now, not only was Barron's employment arrangement far from the general employment arrangement, the case law supporting this rule was not from Minnesota. It was from New Jersey and Pennsylvania. Other cases mentioning this rule in Minnesota are workers' compensation claims, and based on the Minnesota Supreme Court case Frankl v. Barron, scope of employment holdings from workers' compensation claims do not apply to tort courts. Plaintiff Appellant was unable to locate any case involving torts in Minnesota that stated there was a general coming-and-going rule. Well, what about the Getz-Stetler? Counsel, what about the Getz-Stetler case? Goodness gracious, doesn't it announce that kind of case? That kind of rule? Sorry. Certainly, and I'm going to be getting to that in just a second if the court would allow me to proceed. Well, let me ask you a related question since you're putting it off. There is a 1991 case of this court, Acceptance Insurance Company v. Cantor, C-A-N-T-E-R. It wasn't cited by either of you, but that case says Getz-Stetler's the rule on this sort of situation, so that's a prior decision of this court, and so Getz-Stetler's a state law, and Cantor's a prior panel. I think we're belt and suspenders. I got an issue with Getz-Stetler and Cantor. Now, feel free to tell me what's wrong with that. Okay, now the District Court does address the Supreme Court Getz-Stetler v. Dart, but I think it misinterprets the holding. The Getz-Stetler Court specifically notes that employees driving vehicles for the benefit of their employers could be considered within the scope of their employment when driving to or from home if it was a necessary incident of his employment or actuated by an intention to serve his employer. Now, the District Court cites Getz-Stetler as support, but mischaracterizes the facts of that case. The employee driver was not merely or not simply logged off of work and going home at the time of the accident. He had been off duty that entire day and was running a personal errand in his privately owned vehicle while on his way home. This would be similar to if Mr. Barron was driving his vehicle on a Sunday going to the grocery store. Again, I agree it would have nothing to do with scope of employment in that case, but this is not the fact. This is not the case, you know, the case in hand. So, I agree Getz-Stetler would be, you know, but I don't think that the District Court correctly applied that. Additionally, the District Court alleged that Barron's alleged two-block detour to Lovins Auto further removed him from the scope of employment. The case law that the District Court provided to support this holding was from South Dakota, the District of Columbia, and West Virginia. It also ignores Minnesota case law from Bauer v. Markovich that holds that if the deviation is only slight or incidental or has ended and the employee is again pursuing the duties of employment, he remains within the scope of his appointment. This is precisely what Mr. Barron did. It was a brief and alleged deviation. He had accomplished it and was back on his exact route that he would normally take home. So, it was minor, incidental, and had been abandoned. He was once again returning home as required by the Coastal Service. And now the other portion, again going back to Getz-Stetler, was that Barron was not being paid hourly at the time. Again, Getz-Stetler, it's not a necessary incident of employment or actuated by an intention to serve as an employer. I think going home certainly meets that. Now, this also ignores testimony from multiple United States Coastal Service employees that said that Barron would have been within the scope of employment while driving home, but for his deviation by stopping at Lovins Auto, by breaking portable portal coverage, that had he not deviated, a tort investigation would have needed to be opened. I believe that had the district court followed Edgewater and applied only Minnesota law to the very unique facts of the case, the determination would have been that Barron was acting within the scope of his employment on the date of the accident. So, first and probably the most nuanced factor was Barron's conduct substantially within work-related limits of time and place. Outside of the brief time he would be in the Coastal Office, Mr. Barron, the unique employment arrangement required that he have two vehicles available to service his route. The vehicles in his performance were subject to, were supposed to be subject to routine inspection, and even though he owned his own vehicles, if he wanted to modify them, he was supposed to obtain permission. The United States Coastal Service exercised further significant control over how he performed his duties with a detailed, over 150-page book, employee handbook. Now, this doesn't dictate how is he to live his life 24 hours a day, only what he used to do while acting within the scope of his employment, and that includes a significant amount of direction and what he used to do when driving to and from work, notably that he was required to be belted and behind the driver's wheel when not servicing his route. He was required to get authorizations for any deviations from his course. He was paid an equipment and on his route and while he was driving to and from work. Finally, if he abided by the requirements of the employee handbook, he would not only be afforded vehicle coverage while servicing his route, he would get this coverage while driving to and from home. Now, this fact is largely ignored by the district court, even here not being paid an hourly wage while driving to and from work. Yep, but you told us earlier workers' comp cases don't count in this compensation. They have a difference. We have a different system, right? Yes, yes, sir. I'm not saying that the coverage indicates he's within the scope of employment. I'm talking about the coverage as a incredibly valuable benefit because it provides disability coverage, medical coverage, death benefits, and coverage for retraining should be injured on the job. If you were to try to obtain this in the private marketplace, it would be significantly expensive, so that's an incredible benefit that the government has provided to him while coming to and from work should he follow their directions. Next, barren conduct is of the kind authorized by his employer and is reasonably related to that employment. I felt this should be obvious. Barron's employment agreement dictated that after completing his route and returning to the post office to record his time, he was not simply authorized to return home. He was mandated to return directly home. He may have deviated, but as I previously indicated under Minnesota law, his deviation was slight and abandoned at the time of the accident, and to what the court was saying, whatever effect this might have had on his ticket coverage is immaterial to the court. Third, Barron's action was motivated, at least in part, by a desire to further the United States Postal Service's interest. Now, the district court cites Murray in stating that whatever residual benefit Barron provided his own transportation to and from work is too minor to matter. Now, this completely disregards the immense benefit that the United States Postal Service receives from rural carriers providing their own vehicles, especially considering this on the aggregate, as it relieves the United States from maintaining and fueling thousands of vehicles. When you consider that Barron was paid a equipment maintenance allowance of 47 cents per mile, driving 30,000 miles per year, that is a significant expenditure on behalf of the United States. You know, further, the United States Postal Service also recognizes the benefit of rural carriers providing their own vehicle, as they provide $500 of reimbursement if the carriers modify their vehicle to right-hand drive vehicles to allow them to better service their routes. Now, Barron did not do so properly, but the only reason he removed his driver's seat and built a shelf in his place was to better service his route, and him being unable to be seated behind the driver's seat, or behind the driver's wheel, was a significant factor to the head-on collision with Mrs. Larson. Finally, the United States Postal Service should clearly have seen that Barron's conduct, given the nature of his employment and the nature of his career, was foreseeable. I simply do not see how the District Court can determine that a rural carrier being involved in a motor vehicle accident is unforeseeable. A motor vehicle accident for a rural carrier should be, due to its negligence, should be one of the most foreseeable kinds of potential torts for the United States Postal Service. And this is further evident by the fact that a significant portion of the United States Postal Service's employee handbook deals with the safe operation of motor vehicles, not only while servicing their route, but also while traveling to and from home to the Postal Office. In summation, contrary to the requirements of the Federal Tort Claims Act, the District Court order is repeat withholdings from jurisdictions outside of Minnesota and contrary to Minnesota law. Neither the District Court nor the United States has provided statutory or case law indicating that a District Court can choose to apply holdings from, you know, a different jurisdiction if it pleases. A correct application of Minnesota law shows that Barron is acting within the scope of his employment at the time of the accident that ultimately led to Karen Larson's death. The Eighth Circuit reviews a motion to dismiss the lack of subject matter jurisdiction under Rule 12b1 de novo. Accordingly, on behalf of Jason Blaze and all of the heirs of Karen Larson, I request that the Eighth Circuit Court of Appeals overturn the District Court decision and enter an order that Paul Barron was acting within the scope of his employment as a rural carrier of the United States Postal Service on the afternoon of September 30th, 2015. Thank you. Well, thank you, Mr. Gaberson. The court will hear from Mr. Brooker. May it please the court, as noted, I'm Greg Brooker representing defendant United States of America in this Federal Tort Claims Act case. It's important for the court to understand what is in the evidence in this case. It's clear that the court found, the District Court below, in a comprehensive and well-reasoned opinion, found that it was undisputed evidence that the accident in this case occurred some seven miles north of the rural carrier's designated route. After he had clocked out for the day and was driving toward his hometown, just as is the case in Gackstetter, I should note, the driver is driving toward his hometown away from his job duties to the south. The post office in Bertram and his very designated route to the south. The carrier was not delivering mail at the time of this accident and he was not performing any of his other job duties at the post office. It is clear from the evidence in this case that the District Court found he was not receiving mileage under an equipment maintenance allowance program for his commute home. He was not receiving an hourly wage while he was commuting from his route on the way home and he was clearly not an on-call employee. Let's be clear about what the District Court below did here. It most certainly applied Minnesota law and the traditional four-part test that Minnesota follows. And Minnesota, like a lot of other states, follows the restatement second of torts when it comes to scope of employment. And so it was very much appropriate for the District Court, in this case below, to look at Iowa in the Walsh case, look at South Dakota in another Eighth Circuit case dealing with a personal errand, and looking at other states like New Jersey that discussed the going-and-coming rule. Because all those states followed the traditional four-part test that Minnesota followed. It's very important for this court to understand that you have spoken many times about the scope of employment in Federal Tort Claims Act cases and you have applied Minnesota law. The Cantor case stands for the proposition, as Judge Benton noted, that Gackstetter is the foundation of the FTCA and tort analysis, if you will, under Minnesota law. And Gackstetter is on, in many ways, on all fours as this case is. That driver was a truck driver. He meticulously logged his time while on duty and off duty, just as this rural route carrier had to meticulously record his time when he arrived at the post office each morning, when he gathered up all his mail leaving the post office to go on his route. He then meticulously had to record his time when he arrived back at the Bertram post office, after the route head was finished, and then a fourth time had to log out when he delivered whatever undelivered full mail was there and locked up the Bertram post office for the day. Gackstetter, similarly, the driver there had to meticulously log as a truck driver his time. And Gackstetter stands for the proposition that once you log off and you're going home, you're very much not in the employer's time or place, an important first prong of the Minnesota four part test. I would like to have the court look at the joint appendix dealing with this equipment maintenance allowance that the United States Postal Service provides to rural carriers. There's been some misconfusion about this, Your Honor. At JA 817, it's meticulously detailed that this rural route carrier in 2015 received 47.5 cents per mile. And then it's detailed a couple of pages later at the joint appendix at 824 that there's an annual inspection of his route in April of 2015, just a few months before the accident in this case. There's a ride-along by a supervisor who meticulously details every stop that the driver has to make. In this case, at page 824, it's detailed that Mr. Barron has to stop his vehicle 441 times on his route. And it details and locks in the mileage for his route at 106.3 miles, very meticulous number. And you do the math, 106.3 miles for his route times 47.5 cents was the foundation for his annual equipment maintenance allowance. What's commute to and from work. He does not receive any mileage credit. He does not receive 47.5 cents, Your Honors, commuting to and from work. A very important point. Yes, the Postal Service required Mr. Barron to have his own vehicle. They give him an annual allowance for normal wear and tear while he's on duty on the road. That's what he has to do. And it certainly is not compensation for his commute home to and from work. Another confusing point here that has no confusion at all, the District Court properly confined the federal workers compensation statute that Congress meticulously details and is supported by many federal regulations. That is the work top lane. And the District Court below properly said under the Minnesota 1951 Frankel decision, work top scope of employment does not bleed into scope of employment for tort purposes to third parties. They are separate statutory schemes. And here I would submit, Your Honors, that Congress has every right to afford certain insurance coverage as a federal statute, right? And it has also the right to meticulously detail when the United States is waiving sovereign immunity for tort liability to third parties. That scope of employment analysis under this Court's decision in St. John and Primo, you know, those two decisions say District Courts are to stay in their lane and have a very strict scope of employment analysis under the state's tort law. So to submit that the FECA provision buried in a handbook for rural carriers somehow bleeds into tort liability and undoes years of case law of this Court and simply overrides the Federal Court Claims Act is preposterous, right? So here it's very important to understand that FECA is separate from the FTCA. And that's what the District Court did here below. It also importantly said Minnesota's going and coming rule, they may not always use that phrase, but in Gackstetter, it was embedded. And also in an unpublished 1999 Minnesota Court of who's on her way home, reaching for her employer's pager. She has seen her last patient for the day. And she gets into an accident when she reaches for her employer's pager, which is going on. Clearly, the court there applying Gackstetter, and it was such a straightforward case, it wasn't even published. The court there said, that employee is not within the scope of her employment for the employer. She's off duty on her way home. And it's not a deviation from the scope of employment. She was never in it the minute she clocked off. This District Court below cited Gackstetter, Johnson v. Rivera, the Minnesota Court of Appeals decision, and also talked about the Murray decision of the District Court in Minnesota, the Federal District Court, which was affirmed by the Eighth Circuit in 2004. Very much the Murray case bootstraps in this very traditional general rule that says if you're going and coming from work, you're typically not on duty. And there is no evidence in this case below, the government permits, that takes this rural carrier out from under that general rule. Especially in the fact that he's logged off for the day. He is seven long miles from his route. He's clearly on his way home. His hometown is just a little few more miles to the north. He's driving away from his post office, away from his route. He's not getting mileage. There's no travel compensation. There's no hourly compensation for him because the week of the accident, he's paid for 22 hours because he has logged off at 2.15pm. The accident here occurs at 2.30 in the afternoon, some 15 minutes after he's on his way home. In conclusion, Your Honor, I would submit, the government submits that the District Court here in a very comprehensive way, and a meticulous way, combed through the Minnesota case law and looked at this circuit court case law as well, applying the FPCA to Minnesota law, and clearly followed the Rule 12b1 standard, went beyond the complaint, looked at undisputed evidence, found some of the evidence is speculative, and said the burden is on the plaintiff here to establish scope of employment. And here the plaintiff wholly failed after a whole year of discovery, and there's clearly no federal jurisdiction here, Your Honor, for this FPCA case. So the government submits the plaintiff must return to Morrison County District Court in Minnesota, where a private right case against the private parties has been stayed pending this FPCA action, and any potential remedy for the plaintiff lies in that state court action, not in this action in federal court against postal service. Thank you, Your Honor. Thank you, Mr. Broeker. Mr. Gabrielson, your rebuttal. Thank you, Your Honor. The council's point about the designated route and the fact that Mr. Barron was no longer on his rural carrier route delivering parcels, that fails to take into account that the employee handbook states that he has to proceed directly from the post office to home. You know, it's the employee handbook. It's telling him what his duties are, and according to the United States Postal Service, his duties continue after he's done servicing his route. It doesn't matter that he had no parcels in his vehicle. It doesn't matter that he was not delivering mail. Mr. Gabrielson, do you receive the vehicle maintenance for the trip home, the 47 cents a mile? My understanding from the handbook, or from the rural carrier's agreement, I believe, is that so long as he presents to the postal service or to the post office in the morning with a vehicle to service his route, he is to be paid an equipment maintenance allowance. If there was simply no mail and he was to return home, I don't know how the Postal Service would reconcile that, but that's what the agreement states. So long as he presents to the postal service or to the post office with a vehicle ready to perform his route, he's to be paid an equipment maintenance allowance. There could be a circumstance where there's no mail for him to deliver for some reason. He's to return home. I don't know how the Postal Service would reconcile that, but that's certainly something that could happen, and based on that agreement, he would be paid, even if he delivered no mail. Now, further with respect to Walsh and Murray, a significant portion of those cases were the fact that the government did not exercise significant control over how the, I believe they were both in the National Guard, how they were to They could have taken public transportation. They could have ridden with a friend. There was no control exercised by the employer. Furthermore, in neither of those cases were they given travel reimbursement. Now, even if Mr. Barron was not provided, even if he was not provided an equipment maintenance allowance, I think it's still as he abided by the terms of the employee handbook and allowed the government to control his operation of his vehicle. Mr. Gabrielson, your time has expired. Oh, thank you. I'm sorry. I couldn't see the clock. I have a picture of someone else on my screen. I apologize for that, Your Honor. No problem. Thank you. The case, we appreciate your appearance and argument today. Case is submitted, and we will issue an opinion in due course.